### Erastus E. Morse *vs.* John Dwight & others.

A town passed a vote to abolish the school district system, and also at the same meeting voted " to continue the same, with the sanction of the school committee," until a certain day. Before that day, the town, at a new meeting and under an appropriate article in the warrant, voted to " reconsider " the vote abolishing the school districts, and not to abolish them. It did not appear that, under the former vote, and prior to the latter, any actual change had taken place in the management and control of the school-houses and property. *Held,* that the latter vote was effectual to rescind the former and to continue the school district system; and that a by-law of the town prescribing conditions on which a motion for a " reconsideration " of a vote might be made was not applicable to the present case, the subject having been brought before the town at a new meeting and by virtue of a proper article in the warrant.

BILL IN EQUITY by the prudential committee of the first school district in the town of Wrentham, on behalf of the inhabitants of that district, to restrain the general school committee of the town from occupying or interfering with the school-house in that district.

At the hearing before *Gray,* J., upon bill, answer, (which is referred to sufficiently in the opinion,) replication and proofs, the case appeared to be as follows: The warrant for the annual town meeting of March 5th 1866 contained the following articles: " Article 5th. To see if the town will abolish the school district system." " Article 17th. To choose committees or hear and act on the report of the committees." So much of the record of that meeting as relates to this subject was as follows: " Article 5th. It was voted not to abolish the present school district system. Otis G. Cheever gave notice that he would move a reconsideration of the vote last above recorded." That meeting was adjourned to the first Monday in April. The record

of the adjourned meeting shows the following proceedings: "Otis G. Cheever, pursuant to a notice given at the meeting in March, moved a reconsideration of the vote whereby the town voted not to abolish the school district system. After discussion the vote was taken on his (Cheever's) motion, and it was voted not to reconsider." "Article 17th. It was also voted that a committee be chosen to consider the subject of re-districting the town for school districts, or of abolishing the school district system or districts, or uniting any two or more districts; and that said committee report at some future meeting." This meeting was dissolved.

A special meeting of the town was held on the 23d of April, the warrant for which contained the following articles: "Article 8th. To see if the town will abolish the school district system." "Article 10th. To choose committees, and hear and act on the report of committees." The material part of the record of the meeting on the 23d of April was as follows: "Article 10th was taken up, and the committee, by W. W. Cowell, chairman, presented their report and plan of re-districting the territory of the town for school districts. Pending discussion upon this report, a motion was made that said article and the report of said committee do lie upon the table; which motion prevailed, and the meeting proceeded to the consideration of article 8th. And it was voted that the district school system be abolished. And it was also voted to continue the same with the sanction of the school committee until September 1st 1866. And it was voted that the school committee be authorized and instructed forthwith to take possession of all the school-houses, lands, apparatus, and other property owned and used for school purposes by the several school districts in town, which such districts might lawfully sell and convey; that the chairman of the assessors of the towns of Walpole, Foxborough and Franklin appraise all the property so taken at its fair value, and certify their appraisal to the assessors of Wrentham, by the first day of October next. Dissolved."

On the 7th of May another meeting was held, the warrant for which contained this article: "Article 2d. To see if the town

will reconsider a vote passed April 23, 1866, abolishing the school districts." On which the record of the meeting shows this action : " Article 2d. It was voted that the vote passed April 23, 1866, abolishing the school districts, be reconsidered; and it was voted not to abolish the school district system."

Among the by-laws of the town of Wrentham is the following : " No motion for a reconsideration of a vote shall be made unless notice be given by the mover of his intention to make such motion, before the town shall proceed to the consideration of any other article, or within thirty minutes after the vote has been passed."

The following facts were proved by oral testimony : At the meeting of April 23d, an inhabitant of the town, immediately after the passage of the vote by which the town had voted to abolish the school district system, gave notice that he should move to reconsider that vote at the next meeting.

On the 27th of April, the defendant, Dwight, by direction of the general school committee, went to the plaintiff's house for the key of the school-house in this district, and was told that he was not at home, and that the key was in the door. He went to the school-house and found two young men cutting wood at the door ; went in and called upon them to witness that he took possession of the school-house under the vote of the town, and according to the laws of the Commonwealth, and went away, leaving the key in the door. The plaintiff never knew of any taking of possession by the defendants until after the 1st of September, when they demanded of him the key, which he declined to give up, because he and the district, as he said, whom he had consulted, were of opinion that the district system was not abolished. The defendants then took forcible possession of the school-house. The appraisement by the chairman of the assessors of three adjoining towns, according to the vote of April 23d, was made on the 12th of September.

The case was reserved for the determination of the full court.

. *Russ*, for the plaintiff, cited *Sts.* 1817, *c.* 14 ; 1826, *c.* 143 ; Gen. Sts. *c.* 39, §§ 3, 6 ; *Perry* v. *Dover*, 12 Pick. 214 ; *Waldron* v. *Lee*, 5 Pick. 334 ; *Hunneman* v. *Grafton*, 10 Met. 454 ; *George*

v. *School District in Mendon,* 6 Met. 508, 509; *Withington* v *Harvard,* 8 Cush. 66.

*S. Warner, Jr.,* for the defendants. Towns may abolish their school districts at any time. Gen. Sts. *c.* 39, § 3. This was done in Wrentham by the vote of April 23d. And in such case the title changes at once. No refusal on the part of the agents of the town to act could divest the town of its legal ownership. The vote to continue the district system, with the sanction of the school committee, was repugnant to the vote abolishing that system, and was void. The town alone had power over the subject, and could not leave it to the discretion of the committee. The meeting of April 23d was dissolved. The town had exhausted its power to act upon the matter. Its agents had acted. Its legal rights were fixed. And the vote of May 7th could not divest it of its property and restore the same to the districts. *Withington* v. *Harvard,* 8 Cush. 66. *Kingman* v. *School District in North Bridgewater,* 2 Cush. 426. *Hunneman* v. *Grafton,* 10 Met. 454. *Nelson* v. *Milford,* 7 Pick. 27. *Gustin* v. *School District in Danvers,* 10 Gray, 85.

WELLS, J. A vote " that the district school system be abolished," coupled with another vote " to continue the same " until September 1st 1866, must be considered as limited to take effect at the time named. Until that time it is executory, and may be rescinded. By its votes of May 7th the town of Wrentham did rescind its former vote to abolish the districts. The term " reconsider," as used in the warrant and in the vote, is to be taken in its popular, and not in its parliamentary sense. The by-law of the town, as to the time and mode of moving a reconsideration, applies evidently to a reconsideration in its parliamentary sense, namely, a revision of the question, moved and acted upor at the same meeting, or at some adjournment of the same. Such action may be had at an adjourned meeting, without an article in the warrant, or any new call for such meeting. But, the meeting having been dissolved, no reconsideration, in the parliamentary sense, can be had afterwards. When the subject is brought up anew, at an independent meeting, an article in the warrant for such meeting " to see if the town will reconsider'

its former action brings it before the meeting as an original and not a subordinate question. A vote that the former vote abolishing the school districts " be reconsidered," and a vote " not to abolish the school district system," are equivalent to a vote rescinding or annulling the former action of the town. If no rights had become vested or fixed under such former vote, and it had not yet gone into effect, such rescission would intercept and defeat its operation.

The only difficulty in the case arises from the qualifying clause, " with the sanction of the school committee," attached to the vote to continue the district system until September 1st. But if the validity and operation of a formal recorded vote of a municipal organization can be made contingent upon the sanction of a subordinate body or committee, we think that, upon the evidence, that sanction may well be presumed to have been given. Apparently no actual change in the management and control of the school-houses and property took place prior to September 1st. The prudential committee-man retained the keys and control, and was not informed that his responsibility was at an end. The town school committee did not attempt to take any actual possession, and did not even formally notify the district officers that they should cease to exercise authority as district officers. The proceeding by Dwight on the 27th of April appears to have been, and to have been intended, only as a formal act which he supposed to be necessary, under the statute and the vote of the town, to give validity to the vote. That the school committee rested upon that mere formal act indicates that it was intended as a formality, and that it was expected that the school districts would continue in practical operation until the time fixed by the vote of the town. And the vote of the town, instructing the committee " forthwith to take possession," &c., must be interpreted in the same way ; otherwise it would be repugnant to the previous vote to continue the districts until September 1st.

Besides, if the withholding of " the sanction of the school committee " is relied on to defeat the operation of the vote to continue the districts to September 1st, we think it should be

shown by some distinct action of the school committee; because, without such action, their sanction would be given by acquiescence. The formal entry and declaration made by Dwight does not seem to have been made for any such purpose; neither is there any allegation in the answers that such sanction was refused, and the vote to continue the districts thereby rendered inoperative. It being a matter, not only within their own knowledge peculiarly, but of their own proceedings, it was incumbent upon them both to allege and prove it, if they would avail themselves of it as an element in the case.

We therefore conclude that the school districts were never effectually abolished; that the vote for that purpose was rescinded before it took effect; and that the defendants must be enjoined from further interference with the property and corporate rights of the school district. But the bill is not properly brought in the name of the prudential committee-man. As no objection to its maintenance is made on that ground, the plaintiff may amend so as to make the school district plaintiff; and thereupon a decree may be entered in its favor.